**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BENJAMIN DEHART III,

                Plaintiff,

v.

                                    CASE NO. 2:11-cv-11806

LIFE INSURANCE COMPANY OF
NORTH AMERICA,                         HON. MARIANNE O. BATTANI

                Defendant.

_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE RECORD, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON ITS COUNTERCLAIM, DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE RECORD, AND GRANTING DEFENDANT'S MOTION TO STRIKE**

This matter is before the Court on Defendant Life Insurance Company of North America's Motion to Affirm Administrator's Decision and Judgment on Counterclaim (Doc. 33) and Plaintiff Benjamin DeHart's Motion to Reverse the Life Insurance Company of North America's Decision to Terminate Long Term Disability Benefits. (Doc. 35). DeHart filed the instant action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, after Defendant terminated his disability benefits in 2009. In addition, Defendant filed a counterclaim to recover an alleged overpayment of benefits. (Doc. 26). The matter is fully briefed and the Court finds that argument will not aid in the resolution of this matter. See E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, the Court **GRANTS** Defendant's Motion for Judgment on the Administrative Record, **GRANTS** Defendant's Motion for Summary

Judgment on its Counterclaim, **DENIES** Plaintiff's Motion for Judgment on the Administrative Record, and **GRANTS** Defendant's Motion to Strike.

## I.      STATEMENT OF FACTS

Plaintiff Benjamin DeHart worked for Northwest Airlines as an airplane mechanic. He worked from September 18, 1989 until November 1, 2004, the date he was placed on medical leave of absence for injuries arising from an automobile accident in which his vehicle was rear-ended by a truck.   Soon thereafter, DeHart sought long term disability benefits ("LTD") under Northwest's group employee benefit plan entitled: "Northwest Airlines Department A4710 Disability Benefit Plan" (the "Plan"), effective June 1, 2002.   The Plan, issued and administered by Defendant Life Insurance Company of North America ("LINA"), a subsidiary of CIGNA corporation, provides LTD benefits to employees who offer continued "satisfactory proof of Disability."  (A.R. 262). The Plan defines "Disability" as the following:

> An Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
> 1.      unable to perform the material duties of his or her Regular Occupation; and
> 2.      After Disability Benefits have been payable for 36 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is unable to perform all the material duties of any occupation for which he or she is, or may reasonably become qualified based on education, training, or experience.

(A.R. 258).  In accordance with the Plan, LINA determined DeHart could not meet the duties of his "Regular Occupation" as an airplane mechanic.  He began receiving LTD benefits on January 30, 2005.

After the accident, DeHart began treatment with Dr. Marvin Bleiberg for pain in his neck and back.  The treatment was relatively unsuccessful in relieving the pain.

Based on the results of an MRI, Dr. Teck Mun Soo diagnosed DeHart with traumatic spondylopathy, disc herniation C3-4, C4-5, C5-6; bilateral L5 radiculopathy; myelopathy; and carpel tunnel.  (A.R. 1161).  He underwent decompression and fusion surgery of the spine on October 23, 2006.  (Id.)  Prior to the surgery in March 2006, DeHart applied for and received Social Security Disability benefits.  (A.R. 115).  On February 27, 2007, DeHart received a $1.5 million settlement arising out of his third-party tort action filed against the driver of the truck.  (Doc. 33, Ex. B).  He did not notify LINA of the settlement.

On September 28, 2007, DeHart underwent another MRI which indicated that the fusion was stable.  (A.R. 1038-39).  A month later, Dr. Bleiberg performed an electrodiagnostic nerve conduction study on DeHart.  (A.R. 1029-31).  Dr. Bleiberg found "Carpel Tunnel Syndrome on the right and left" and that "[t]here is no electrodiagnostic evidence for a Cervical Radiculopathy." (A.R. 1031).  Several months later on January 30, 2008, the standard for disability changed, requiring DeHart to demonstrate that he was unfit to perform "any occupation" in order to continue receiving LTD benefits.  (A.R. 258).  Nonetheless, LINA approved payment under this standard and continued DeHart's benefits.  During this time, DeHart also received insurance benefits from State Farm, his no-fault carrier.

On September 11, 2008, nearly four years after the accident, DeHart visited Dr. Joseph Femminineo for an independent medical examination ("IME") requested by State Farm.  Based on the exam, Dr. Femminineo concluded that DeHart was able to perform sedentary and light-duty work.  (A.R. 912).  On March 19, 2009, a transferable skills analysis revealed that DeHart could perform sedentary and light occupations such

3

as electric meter repairer, parts manager, and aircraft equipment sales representative. (A.R. 433). Therefore, on March 25, 2009, LINA notified DeHart that he failed to qualify for continuing LTD benefits. (A.R. 184-86).

On June, 8, 2009, DeHart appealed the termination of his benefits. In support, he submitted a letter dated April 21, 2009 from Dr. Bleiberg stating, "Mr. DeHart is permanently disabled from any and all gainful employment." (A.R. 429). Dr. Bleiberg noted that DeHart required several medications to treat his pain, including OxyContin, methadone, baclofen, Restoril, Albutrin, and Zoloft, resulting in decreased concentration and fatigue. (A.R. 431). Dr. Bleiberg also posited that DeHart "requires the ability to alternate sitting, standing, walking and lying down at will" and that DeHart would likely miss several days of work because of the pain in his neck and back. (Id.) DeHart also submitted several office notes detailing DeHart's recurring visits to Dr. Bleiberg during 2010. (A.R. 804-34).

Dr. Charles McCool, LINA's associate medical director, and Dr. Donald Minteer separately reviewed DeHart's appeal. Both concluded that the medical information indicated that DeHart could perform light to sedentary work. (A.R. 29-34). Therefore, LINA upheld its decision to terminate benefits. (A.R. 168-170).

DeHart then filed a second appeal on December 14, 2010. LINA assigned the case to Dr. Francis Hall to conduct an independent peer review. (A.R. 292-95). Dr. Hall concluded that DeHart could at least return to sedentary work. (A.R. 293). Notably, Dr. Hall unsuccessfully attempted to contact Dr. Bleiberg twice. (A.R. 294). On February 2, 2011, LINA affirmed its decision to terminate benefits. (A.R. 155-56). On April 25, 2011, DeHart filed the instant action seeking judicial review of the termination of his

4

benefits under ERISA.  Upon disclosure of the $1.5 million settlement agreement, the Court granted leave for LINA to amend its answer and file a counterclaim to recover overpayment of benefits.  (Doc. 26).

## II.    STANDARD OF REVIEW

Motions for judgment on the administrative record in an ERISA action are not akin to motions for summary judgment under Fed. R. Civ. P. 56(a).  See Wilkins v. Baptist Healthcare Sys., Inc., 150 F.3d 609, 618 (6th Cir. 1998) ("This standard of review does not neatly fit under either Rule 52 or Rule 56, but is a specially fashioned rule designed to carry out Congress's intent under ERISA.").  Accordingly, a district court reviews an ERISA plan administrator's denial of benefits _de novo_ unless the plan grants the administrator discretionary authority to determine eligibility for benefits.  Cox v. Standard Ins. Co., 585 F.3d 295, 299 (6th Cir. 2009) (citing Gismondi v. United Techs. Corp., 408 F.3d 295, 298 (6th Cir. 2005)).  If the plan gives the administrator discretionary authority, a court applies the highly deferential "arbitrary and capricious" standard of review.  Id.  "The arbitrary and capricious standard is the least demanding form of judicial review of administrative action.  When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."  Schwalm v. Guardian Life Ins. Co. of America, 626 F.3d 299, 308 (6th Cir. 2010) (internal quotation marks omitted) (quoting Shields v. Reader's Digest Ass'n, Inc., 331 F.3d 536, 541 (6th Cir. 2003)).  Even when a claimant has introduced evidence that might be sufficient to support a finding of disability, if there is a reasonable explanation for the administrator's decision denying benefits because of the plan's provisions, then the decision is neither arbitrary nor capricious.  Id. (citing

5

Williams v. Int'l Paper Co., 227 F.3d 706, 712 (6th Cir. 2000)).  Therefore, a reviewing court must uphold the administrator's decision "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence."  Baker v. United Mine Workers of Am. Health & Ret. Funds, 929 F.2d 1140, 1144 (6th Cir. 1991).

## III.   ANALYSIS

### A.   Appropriate Standard of Review – Arbitrary and Capricious

LINA asserts that the Plan contains language granting it discretionary authority to determine benefit eligibility, and thus the arbitrary and capricious standard of review applies.  Cox, 585 F.3d at 299.  Indeed, the Plan provides: "[claimant] must provide to [LINA], at his or her own expense, satisfactory proof of Disability before benefits will be paid."  (A.R. 262); see also (A.R. 267) ([LINA] shall have the authority, in its discretion . . . to decide questions of eligibility for coverage or benefits under the Plan").  DeHart does not dispute the effect of Plan language.  Indeed, such language is sufficient to confer discretionary authority to LINA.  See Perez v. Aetna Life Ins. Co., 150 F.3d 550, 556-57 (6th Cir. 1998) (noting that language requiring satisfactory evidence "to the insurer" or "to the company" created a "clear grant of discretion").  As such, the Court finds the language sufficient to grant discretion to LINA in determining benefit eligibility.

Nonetheless, DeHart asserts the Court must review the decision *de novo* because: (1) Connecticut General Life Insurance Company ("CGLIC") (a wholly owned subsidiary of CIGNA), sent a letter to the Michigan Commissioner of Insurance warranting that CGLIC does not use forms containing discretionary clauses in its policies; (2) Minnesota law prohibits discretionary clauses in insurance policies; and (3)

6

LINA, as both claims administrator and insurer, operated under a conflict of interest in processing DeHart's claim. Each argument will be addressed in turn.

First, DeHart asserts LINA is bound by CGLIC's statement that it does not use forms containing discretionary clauses in its policies issued in Michigan. (Doc. 35, Ex. 2). LINA is a wholly owned subsidiary of CGLIC. However, the Plan in this case was issued in Minnesota, not Michigan. (A.R. 247). Regardless, subsidiaries are treated as wholly separate corporations under Michigan law, and thus must be treated as such. See Wells v. Firestone Tire & Rubber Co., 364 N.W.2d 670, 674 (Mich. 1984) ("We recognize the general principle that in Michigan separate entities will be respected."). Consequently, LINA cannot reasonably be bound by statements in a letter sent from a parent corporation to the insurance department of another state. DeHart's argument is without merit.

Next, DeHart argues Minn. Stat. § 62Q.107 prohibits discretionary clauses in policies issued after January 1, 1999 (LINA's LTD Plan was issued June 1, 2002). The statute provides in relevant part:

> [N]o health plan . . . may specify a standard of review upon which a court may review denial of a claim or of any other decision made by a health plan company with respect to an enrollee. This section prohibits limiting court review to a determination of whether the health plan company's decision is arbitrary and capricious, an abuse of discretion, or any other standard less favorable to the enrollee than a preponderance of the evidence.

Minn. Stat. § 62Q.107. "Health plan" is a statutorily defined term that expressly excludes "disability or income protection coverage." Minn. Stat. § 62A.011. Because the policy at issue concerns only LTD benefits and is not a "health plan" under Minnesota law, the statute is inapplicable.

7

Last, DeHart argues that a conflict of interest influenced LINA's decision, and thus the Court must review the decision *de novo*. The general rule is that an apparent conflict of interest arises when the administrator both determines eligibility for benefits and is responsible for paying such benefits. See <u>Glenn v. Metro. Life Ins. Co.</u>, 461 F.3d 660, 666 (6th Cir. 2006) (noting that such a "dual function creates an apparent conflict of interest"). In such a case, "the conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.'" <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989) (internal citation omitted).

Here, LINA, as administrator, determined eligibility for benefits and paid out benefits. LINA contracted with Professional Disability Associates ("PDA"), which employed Dr. Hall to review DeHart's appeal. Contrary to DeHart's claim, an apparent conflict of interest does not require the court to engage in *de novo* review. See <u>Kalish v. Liberty Mut.</u>, 419 F.3d 501, 506 (6th Cir. 2005). Rather, it is only a factor in the court's analysis as to whether the decision was arbitrary and capricious. Moreover, other than a blanket statement that LINA routinely hires PDA to review claims, DeHart provides no evidence that PDA or Dr. Hall are prone to find in favor of LINA merely because LINA paid for the independent peer review. See <u>Peruzzi v. Summa Med. Plan</u>, 137 F.3d 431, 433 (6th Cir. 1998) (requiring "significant evidence" that the conflict of interest tainted the decision). Such unsupported conclusory statements do not demonstrate that the decision was tainted. Consequently, the Court will place little weight on this factor in its analysis of LINA's decision to terminate benefits, and the decision will be analyzed under the arbitrary and capricious standard.

8

**B.      LINA's Decision was not Arbitrary and Capricious**

LINA's decision to terminate benefits will be upheld "if it is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." Baker, 929 F.2d at 1144.  DeHart bears the burden of demonstrating he is eligible for benefits.  (A.R. 262).  He argues that LINA improperly terminated his LTD benefits because his condition has not improved and he is still completely disabled.  Specifically, he argues LINA ignored the medical evidence provided by his treating physician, Dr. Bleiberg, indicating the severe pain he experiences on a daily basis, precluding his ability to work any occupation.  DeHart also asserts LINA failed to consider the ruling by the Commissioner of Social Security that he is disabled.   In contrast, LINA claims DeHart is able to perform at least sedentary work and failed to meet his continuing burden for LTD benefits.   LINA asserts it considered the award of Social Security benefits and properly discounted Dr. Bleiberg's conclusions based on the medical evidence in the record.

1.      Social Security Administration's Decision

A finding of disability by the Social Security Administration ("SSA") does not "automatically entitle[] [a claimant] to benefits under an ERISA plan, since the plan's disability criteria may differ from the Social Security Administration's."  DeLisle v. Sun Life Assur. Co of Canada, 558 F.3d 440, 445-46 (6th Cir. 2009) (citing Whitaker v. Hartford, 404 F.3d 947, 949 (6th Cir. 2005)).  However, where the plan administrator

> (1) encourages the applicant to apply for Social Security disability payments; (2) financially benefits from the applicant's receipt of Social Security; and then (3) fails to explain it is taking a position different from the SSA on the question of disability, the reviewing court should weigh this in favor of a finding that the decision was arbitrary or capricious.

Bennett v. Kemper Nat. Servs., Inc., 514 F.3d 547, 554 (6th Cir. 2008).

In the instant case, it is undisputed that LINA encouraged DeHart to apply for Social Security disability benefits and that LINA benefitted from the award because it reduced its obligation.  In fact, LINA hired an attorney to represent DeHart in the matter.  DeHart argues that LINA failed to provide an explanation for discounting the decision of the SSA, and thus this factor weighs in his favor that the decision was arbitrary and capricious.

In the letter denying DeHart's appeal, LINA stated:

We are aware that Mr. DeHart was awarded Social Security Disability benefits; however, the standard for determining Disability under this policy may be different from the standard used by the Social Security Administration (SSA).  As a fiduciary under Northwest Airlines Departments' LTD Policy, we are required to make our determination based on the applicable provisions of the Policy and the proof of loss information available.  Without an opinion from SSA explaining the basis for its decision, we cannot evaluate its reasoning and so, can take note of its decision, but cannot rely on or otherwise promote that decision ahead of other proof of claim and policy information.  We must make our determination independent of Social Security's determination and based upon the medical information provided and the specific policy provision requirements under Northwest Airlines Department Policy Number LK 30561.

(A.R. 164).

In contrast to the above statement, DeHart asserts LINA received the SSA opinion in 2006.  (A.R. 1349).  Although LINA received notice of the decision, there is no evidence in the record that it received the actual opinion detailing the SSA's rationale for a finding of disability.  The fax, dated March 20, 2006, does not contain the SSA opinion.  In fact, DeHart cites no evidence that he submitted it to LINA in accordance with his burden to demonstrate his disability.  Undoubtedly, LINA cannot provide an explanation for something it did not possess during its determination.  Dr. Hall did

consider the award letter in his review, but did not provide a discussion of its contents because he did not possess the actual opinion.  (A.R. 743).

Perhaps most importantly, the SSA's decision predates LINA's decision to terminate benefits by over three years.  During this time, DeHart underwent intense surgery and substantial medical treatment for his injuries, resulting in improved functionality.  LINA explained its reasoning for not following the SSA's decision, noting that it must conduct its own review in accordance with the Plan language and that DeHart never submitted the actual opinion as evidence of his disability.  Due to the changing circumstances of DeHart's treatment, the SSA's disability determination offers little probative value as evidence of DeHart's disability at the time LINA terminated LTD benefits.  Regardless, the Court will consider this factor in DeHart's favor, but will afford it little weight.

### 2.   Medical Evidence

LINA terminated benefits based on its conclusion that DeHart failed to demonstrate his inability to perform the material duties of *any occupation* because he is able to perform sedentary to light work.  As evidence of that he cannot perform even sedentary work, DeHart points to several statements in Dr. Bleiberg's April 2009 letter that his pain is debilitating and that he is completely and permanently disabled.  DeHart submitted the letter in support of both appeals.  In all, Dr. Bleiberg listed eighteen different diagnoses affecting DeHart.  He also stated that despite all of the treatment, "Mr. DeHart remains with severe pain and significant functional deficits to the present time." (A.R. 430).  He further notes that DeHart complains of insomnia and severe back spasms.  (Id.)  In terms of functional limitations, Dr. Bleiberg noted that the amount of

11

medication DeHart requires leads to fatigue and concentration problems.  Based on his pain, Dr. Bleiberg concluded that DeHart "requires the ability to alternate sitting, standing, walking and lying down at will."  (A.R. 431).  He further posited that this would require DeHart to miss numerous days of work, precluding any ability to maintain gainful employment.   Dr. Bleiberg's extensive patient notes document DeHart's consistent complaints of pain.  For example, on July 19, 2010, DeHart complained of a "sharp and stabbing sensation in his back."  (A.R. 831).  However, Dr. Bleiberg noted that there is "no specific aggravating factor" and that "not much is seeming [sic] to help."  (Id.)

LINA correctly points out that Dr. Bleiberg never conducted a physical examination in order to determine functionality.   Dr. Bleiberg confirmed this in his deposition.  (A.R. 303).  When asked how DeHart's functionality was determined, Dr. Bleiberg stated that it was solely based on what DeHart tells him.  (Id.)  In contrast, Dr. Femminineo conducted a comprehensive physical examination and concluded that DeHart could return to work with restrictions.   (A.R. 910-12).   These restrictions included: "avoidance of lifting weight greater than 30 pounds; avoidance of repetitive bending, stooping and twisting at the waist; and in particular avoidance of extension of the cervical spine and lumbar spine over extended periods of time".   (Id.)   Dr. Femminineo also recommended weaning DeHart off of the several pain medications, as DeHart had reached maximum medical improvement, noting "[h]e is on some very potent long-acting narcotic agents for his present subjective complaints."   (Id.)   He expressed concern that DeHart had been taking the medications for several years.

DeHart attacks this analysis, citing Dr. Bleiberg's deposition testimony that Dr. Femminineo failed to take into account DeHart's cervical and lumbar radiculopathy

(pinched nerves), muscle spasms, severe pain, and narcotic medications.  (A.R. 849).

In essence, these all relate to DeHart's complaints of pain.  However, Dr. Femminineo's

physical functional analysis revealed DeHart possessed enough functionality without

pain to perform sedentary work, notwithstanding his complaints of pain in his lower back

and neck.  Remarkably, Dr. Bleiberg's September 2007 report expressly found no

"electrodiagnostic evidence for a Cervical Radiculopathy," contradicting his deposition

testimony. (A.R. 1031).  DeHart offers no explanation for this discrepancy.  Dr. Bleiberg

never conducted a physical functional analysis, instead relying solely upon DeHart's

self-reported complaints.  DeHart fails to provide any other reason as to why Dr.

Femminineo's medical opinion is unsound.

Certainly, LINA reasonably afforded greater weight to Dr. Femminineo's

functional analysis as opposed to Dr. Bleiberg's second hand reports of DeHart's pain in

his neck and back.  This also undermines Dr. Bleiberg's conclusion that side effects of

the several prescribed narcotic medications preclude DeHart's ability to work.  Dr.

Femminineo concluded that the medications should be gradually discontinued, thereby

removing any side effects that interfere with concentration or cause fatigue during work.

Moreover, Dr. Hall, Dr. McCool, and Dr. Minteer all concluded that DeHart could

return to at least sedentary work.  DeHart takes issue with LINA's reliance on these

"paper reviews."  However, there is "nothing inherently objectionable about a file review

by a qualified physician in the context of a benefits determination."  Calvert v. Firstar

Fin., Inc., 409 F.3d 286, 296 (6th Cir. 2005).  In his review, Dr. Hall noted that DeHart

had "grade one anteriolithesis and moderate to severe loss of invertebral disc space."

(A.R. 293).  However, he stated that "[t]his is likely a cause for him to have low back

13

pain difficulties but by itself does not determine how debilitating his pain is and should not be considered fully debilitating with a competent functional analysis." (Id.)  Further, Dr. Hall noted that although DeHart "self reports pain[,] little is offered in the form of treatment aside from medical management."  (A.R. 294).  Dr. Hall also noted that DeHart stated that he could perform daily living activities and that he rides an exercise bike for ten minutes a day.

In all, four independent physicians determined that DeHart could at least return to sedentary work.  Thus, it was reasonable for LINA to discount Dr. Bleiberg's findings, considering that Dr. Bleiberg never determined DeHart's functionality.   Dr. Bleiberg merely relegated DeHart to prescription drugs based on his complaints of severe pain. Indeed, a plan administrator is not required to accept opinions of the claimant's treating physician when contrary medical evidence exists.  See Cooper v. Life Ins. Co. of North Am., 486 F.3d 157, 167 (6th Cir. 2007) (noting that insurer "was not obligated to blindly accept the treating physicians' opinions").   Here, Dr. Bleiberg's conclusion that DeHart is permanently disabled and unable to maintain gainful employment is substantially based on DeHart's complaints of pain and unsupported by the evidence.   Notably, DeHart offers no other evidence to refute the findings of the four other physicians.  LINA did not ignore Dr. Bleiberg's opinion, but reasonably concluded that DeHart could return to work in at least a sedentary capacity after being disabled for several years as a result of the accident.

### 3.   Conclusion

DeHart concedes that it is his burden to demonstrate that he is disabled. However, a substantial majority of the medical evidence indicates that he can return to

work in at least a sedentary capacity.  After weighing all of the relevant factors, including the little weight afforded to both the apparent conflict of interest and SSA's decision, it is clear LINA performed a full and fair review of DeHart's claim.  Under this very deferential standard, LINA's decision is not arbitrary and capricious where objective medical evidence of DeHart's inability to perform sedentary work is lacking.

    **C.**    **LINA's Counterclaim**

        1.   <u>Standard of Review</u>

    LINA's counterclaim to recover overpaid benefits is not entitled to deferential review, but is appropriately analyzed as a motion for summary judgment pursuant to Rule 56(a).  <u>See</u> <u>Lee v. Kaiser Found. Health Plan Long Term</u>, 2012 WL 664733 *2 (N.D. Cal. February 28, 2012) (noting that "because [defendant's] counterclaim does not implicate the denial of long-term disability benefits . . . the Court finds it appropriate to treat the present Motions as motions for summary judgment").  Summary judgment is appropriate only when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986).  Rule 56 mandates summary judgment against a party who fails to establish the existence of an element essential to the party's case and on which that party bears the burden of proof at trial.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).

2.    LINA's Motion to Strike

Before turning to the merits of LINA's counterclaim, the Court must address LINA's motion to strike several affidavits addressing DeHart's settlement award in 2007. In support of his argument that LINA is not entitled to overpayment, DeHart submitted affidavits from Leonard Koltonow and James Borin, both Michigan attorneys. Koltonow, who represented DeHart in the negligence lawsuit, attests that the lawsuit did not arise out of a work loss provision in a No-Fault insurance policy. (Doc. 35, Ex. 3). It also states that the settlement did not allocate payment for lost wages. (Id.) Similarly, the affidavit of Borin states that the "clear language of the [Plan] does not confer a right of set off of proceeds from any tort or negligence settlement." (Doc. 35, Ex. 4). LINA also seeks to strike DeHart's affidavit, which states that State Farm has continued its payment of benefits. (Doc. 42). DeHart's affidavit is offered as evidence of his disability, but was never presented to LINA during its review of DeHart's claim. The Court did not consider it in its analysis above. Consequently, the Court will strike the affidavit. See Racknor v. First Allmerica Fin. Life Ins. Co., 71 F. Supp. 2d 723, 729 (E.D. Mich. 1999) ("The Court may not admit or consider any evidence not presented to the administrator.").

It is clear that the affidavits of Koltonow and Borin are offered as legal conclusions that the settlement proceeds from the negligence lawsuit do not qualify as "Other Income Benefits" under the Plan. The Court refuses to accept these affidavits as support for DeHart's position. See Berent v. Kemper Corp., 780 F. Supp. 431, 440 n.11 (E.D. Mich. 1991) (noting that "the Court is not required – and expressly refuses – to accept as support for a party's position with respect to a pending motion an Affidavit of a

16

third-party . . . who offers nothing more than his personal opinion regarding the law"). Although Koltonow represented DeHart in the negligence suit, his opinions regarding the interpretation of LINA's Plan language are irrelevant.  Consequently, the Court will strike both affidavits.

### 3.   No Genuine Dispute of Fact Exists

Under ERISA, a plan fiduciary may commence a civil action "to obtain other appropriate equitable relief . . . to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).  The Plan provides that if a disabled employee entitled to LTD benefits receives additional "Other Income Benefits," those benefits will reduce any benefits payable or will result in a "request for a lump sum payment of the overpaid amount."  (A.R. 263, 265).  "Other Income Benefits" include "any amounts which the Employee receives (or is assumed to receive) under . . . any work loss provision in mandatory 'No-Fault' auto insurance."  (Id.)  The Plan further provides that "Other Income Benefits or earnings that are paid in a lump sum will be prorated over the period for which the sum is given.  If no time is stated the lump sum will be prorated monthly over a five year period."  (A.R. 264).  In addition, "[i]f no specific allocation of a lump sum payment is made, then the total payment will be an Other Income Benefit." (Id.)  Here, LINA seeks return of the overpayment of benefits to DeHart, not for a portion of his settlement.  Based on the Plan language, which grants LINA authority to recover overpaid benefits, the Court finds LINA's counterclaim qualifies as "appropriate equitable relief" under § 1132(a)(3).  See Thurber v. Aetna Life Ins. Co., 712 F.3d 654, 664-65 (2d Cir. 2013) (holding that claimant held administrator's overpayment of

benefits in constructive trust upon which administrator held an equitable lien, thereby constituting equitable relief under ERISA).

LINA asserts that the $1.5 million settlement DeHart received as a result of his third-party tort action filed against the driver of the truck constitutes "Other Income Benefits" because it results from work loss damages under mandatory No-Fault auto insurance.  Thus, LINA overpaid DeHart's benefits in the amount of $46,033.00.  DeHart does not dispute this amount.

The Plan expressly provides that LINA may recover overpaid benefits if the claimant receives other benefits pursuant to any work loss provision in mandatory no-fault auto insurance.  Under Michigan no-fault law, an injured party's recovery is limited to 85% of lost wages for up to three years.  See Mich. Comp. Laws § 500.3107(b).  However, Michigan's mandatory no-fault scheme also authorizes third-party actions for noneconomic and economic damages in excess of 85% of three years' worth of work loss.  M.C.L § 500.3135(3)(c).  Indeed, DeHart's action expressly sought "damages for all allowable expenses and work loss in excess of the daily, monthly, and three year limitations plus all other economic damages allowable under the Michigan No-Fault Law."  (Doc. 33, Ex. A, ¶ 17).  DeHart received a $1.5 million settlement arising out of his third-party tort action.   Clearly, DeHart's settlement proceeds constitute "Other Income Benefits" under the policy, as they arise out of "any work loss provision in mandatory 'No-Fault' auto insurance."   Per the "Reimbursement Agreement," DeHart was required to "promptly notify" LINA of any award of other benefits received.  (A.R. 1592).  In addition, because the settlement did not allocate or differentiate between

18

work loss payments and noneconomic damages, the entire lump sum offsets the benefits paid by LINA from the time of settlement.

DeHart argues that the settlement proceeds do not constitute "Other Income Benefits" under the Plan for several reasons. First, he argues the Plan does not expressly require offset from an auto negligence lawsuit and that the settlement did not account for lost wages or income replacement. DeHart filed the suit seeking damages under Michigan's no-fault scheme. The mere fact that the settlement agreement did not allocate any categories of damages is not dispositive. Notably, DeHart's suit would have been barred but for the express provision permitting such actions in the Michigan No-Fault scheme. DeHart relies on Baxter v. Sun Life Assurance Company of Canada, 833 F. Supp. 2d 833 (N.D. Ill. 2011) for the proposition that negligence actions cannot arise under no-fault statutory schemes. His reliance is misplaced. In Baxter, the beneficiary received a settlement award arising out of a medical malpractice suit brought against the hospital where he received treatment. Id. at 836. Defendant argued that the award constituted "Other Income Benefits" because it was an amount received "due to income replacement or lost wages paid to you by compromise, settlement, or other method as a result of a claim for any Other Income Benefit." Id. at 837. The court found the language insufficient to include medical malpractice tort claims within the definition of "Other Income Benefits" because "a malpractice recovery is not a typical 'income benefit' which foreseeably results from [a disability]." Id. at 842. Perhaps more importantly, the claimant's tort action arose out of treatment he received after he became disabled, unrelated to the cause of his disability. Id. at 842 n.6. Unlike

Baxter, DeHart's third-party tort action sought damages relating to the cause of his disabling condition and fits squarely within the Plan language.

Second, DeHart asserts that because Michigan no-fault insurance work loss only compensates an insured for up to three years, work loss recovery is not a "mandatory" recovery under M.C.L. § 500.3135(3).  This argument is off point.  The Plan uses the word "mandatory" to modify "No-Fault auto insurance."  It merely refers to the type of no-fault scheme, which in Michigan, is mandatory for all operators of automobiles.

Last, DeHart argues that settlement proceeds do not constitute "income" under the Internal Revenue Code ("IRC").  His settlement proceeds may not be taxable income under the IRC.  However, this does not modify the defined terms of the Plan.

In sum, LINA is entitled to recover $46,033.00 in overpaid benefits.

## IV.   CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion for Judgment on the Administrative Record, **GRANTS** Defendant's Motion for Summary Judgment on its Counterclaim, **DENIES** Plaintiff's Motion for Judgment on the Administrative Record, and **GRANTS** Defendant's Motion to Strike.  The decision of the administrator is **AFFIRMED**.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

DATE:  September 5, 2013

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the above date a copy of this Opinion and Order was served upon all parties of record via the Court's ECF Filing System.

<u>s/Bernadette M. Thebolt</u>

Case Manager